Spear, J.
Complaint is made by plaintiff in error of the admission of incompetent testimony against its objection, to the refusal of the trial court to give instructions to the jury requested by it, and to the charge as given.
1. The question of evidence. One Heron, a witness for the plaintiff below, had testified that he had resided at Bowling Green, Wood county, about nine years; that he had been engaged in the business of shooting oil wells for about thirty years, and was acquainted with the duties of one called upon to shoot a well, and knew the prevailing custom in that respect. He was then asked this question:
“Now, I will ask you, Mr. Heron, suppose the shooter of a well brings one hundred quarts of nitroglycerine to said well, the nitro-glycerine had been placed in the shells, lowered in the well, the well logged in, the derrick boarded up, except the opening facing towards the engine and belt house, the said well being at a distance of from 80 to 200 feet of the residence and buildings- adjoining and surrounding it, located in a village of twelve to thirteen hundred people; the condition of the atmosphere such that when the gas is liberated from the well, it settles to the surface of the earth; would the hour of 7 :80 o’clock on the seventh day of September in any year when darkness had intervened so that fires and lights are lit in certain of such business and dwelling houses be, in your opinion, a proper time to shoot such well; that is to say, explode such torpedo therein?”
Objection by the Torpedo Company was overruled and exception entered.
Answer: “It is not a proper hour.”
*613 The objection urged is that this was error because the fact sought was a matter to be found by the jury. We do not think the admission of the evidence was error. The fact called for was evidentiary. It tended to prove one fact involved in the issue, but was not the ultimate fact in issue. Nor was it a subject of common knowledge, or one of which the jury could as well judge as the witness. As an expert his knowledge extended to all the dangers incident to an explosion of such a quantity of nitro-glycerine at such a place, at such an hour, and with such surroundings. The average juror might not intelligently and fully determine the natural connection between cause and effect, and draw the proper conclusion from the general facts proven. At least the jury might be aided in that duty by the opinion of one whose experience and knowledge, especially as to the violent effects incident to the explosion, and as to the inflammable character of gas when mixed with the atmosphere and brought in contact with fire, and the extent of the attendant dangers, was greatly superior to their own. Steamboat Clipper v. Logan, 18 Ohio, 375; Stewart v. The State, 19 Ohio, 302; Protection Ins. Co. v. Harmer, 2 Ohio St., 452; Railroad Co. v. Schultz, 43 Ohio St., 270.
2. Instruction refused. The defendant, the Ohio & Indiana Torpedo Company, requested the court to charge the jury as follows:
“If the jury find from the evidence that the Torpedo Company’s servant placed the torpedo in the well as directed by Grant, the owner, and that after it was in place, the owner said to the company’s servant that he, the owner, would drop the go-devil; and if they further find that the torpedo was so placed and arranged that it could be surely exploded by dropping the go-devil, and that it was so exploded; and if the jury also find that the owner did explode said torpedo, then the jury would be justified in finding that the owner of the well assumed the duty *614 and responsibility of exploding tbe torpedo himself; and if the jury so find, then the responsibility of the Torpedo Company ended with the proper placing of the torpedo,. and it can not be made liable in damages to the plaintiff in this action.”
The request was properly refused. The term “as directed by Grant, the owner,” is indefinite. It does not adequately express the supposition that Grant was in exclusive 'control of the work, and had assumed the duty and responsibility, as between him and the Company, of exploding the torpedo himself so as to justify the conclusion that the Company could not be liable in damages to plaintiff, even if, in any condition of the case as between the defendants that conclusion would be warranted. It appears to be based upon the assumption that the Company, although negligent itself as between it and the plaintiff, might escape responsibility by showing that Grant was also negligent, and leave out of view the duty of the Company’s servant to see that the explosion of the torpedo was made at a time when, under the circumstances, it was reasonably safe to explode it, as well with respect to the public as to the persons engaged in thb work. Whether or not the Company was negligent in that regard depended upon the evidence as to the entire transaction, and not wholly upon whether the agent placed the torpedo as directed by Grant and left it to be exploded by Grant, and was one of the questions to be determined by the jury upon tiie whole evidence.
3. The charge as given. At request of defendant, Grant, the court gave in the charge the following, viz:
“First. If you find from the evidence that nitroglycerine is a dangerous explosive, and that the defendant Torpedo Company used nitro-glycerine in shooting the oil well in question, and if you further find that in the shooting of said well, gas was liable to arise therefrom, which gas was liable to ignite *615 and explode, it was the duty of said Torpedo Company to so handle, use and control said nitro-glycerine and not to explode the same, unless the conditions and surroundings of said oil well were such as not to be liable to cause the gas arising from such well to ignite or explode, and if said defendant Torpedo Company failed or omitted to perform its duty in this regard, such failure and omission would be negligence on the part of said Torpedo Company.”
“Second. If the business of shooting oil wells is attended with danger to persons and property in the vicinity, and if such business requires the exercise of especial knowledge and skill, and if the defendant, the Ohio & Indiana Torpedo Company, at the time of shooting said well was a reputable company, skilled in said business, the defendant, George E. Grant, had the right to employ said Company to do the shooting of said well, and had the right to rely upon the care and skill of said Company in the performance of said work.”
“Third. If you find from the evidence that the defendant, George E. Grant, had the well in question in readiness to be shot, and that the defendant, Torpedo Company, undertook to do the work of shooting said well, and commenced the same in time so that in the usual and ordinary course of such work the same would have been completed before darkness set in, and if the defendant, Torpedo Company, from any cause delayed the work, so that it did not have said shot ready to explode until darkness set in, and if the jury find from the evidence that the exploding of said shot at that time was negligent, and that said Torpedo Company so caused the same to be done at that time, and by reason thereof an injury occurred to the plaintiff, the defendant, the Torpedo Company, would be liable therefor.”
If the propositions were proper in themselves we ■cannot see that the Company should complain because they were given at the request of defendant, Grant. *616 If proper the court might have given them of its own motion, and what the court might give sua sponte it surely might give upon request.
The objections urged are that the first request assumes that the Company controlled the time of exploding the torpedo; that it was the duty of the Company to see that the fires were put out, and that the- company actually exploded the torpedo, while the second request applies to the company the doctrine of an independent contractor, and the third request assumes that there is evidence from which the jury might find that the Company caused the torpedo to be exploded, while the evidence conclusively shows that it was Grant and not the Company’s servant, which caused the torpedo to be exploded.
We are unable to see that either objection is well taken. The Company was then and there using nitroglycerine for the purpose of having it exploded in the well. The explosion was caused by dropping in the well an iron instrument pointed at one end, called a go-devil. The “shooting” of the well, as it is called, was accomplished by the explosion of the torpedo, and was the purpose for which the Company had been employed. Whether, therefore, the dropping of the go-devil was by the hand of the Company’s servant, or by the hand of Grant, could make no difference with the Company’s responsibility for the consequence as between it and the plaintiff, provided the dropping was a necessary step to the result which the Company was there employed to produce. Evidence had been given, pro and con, to show the custom of the business with respect to whether or not, under the custom, it was the duty of the “shooter” to drop the go-devil and explode the torpedo, or of the owner, and the jury had been, at the beginning of the charge, instructed in substance that if the proof established that the owner of the well had, under the custom and usages of the business, power to decide when the well shall be shot, and that the shooter, after placing the *617 nitro-glycerine in the well, had no authority over the owner, either to hasten or delay the shooting, then the responsibility of the Company ended in the placing of the torpedo in the well, and it would not be responsible for any negligence occurring at the shooting by reason of the lateness of the hour, or the condition of the atmosphere, and could not be held responsible for any consequence of such negligence. So that from the whole charge it became apparent that if the above hypothesis had been established by the evidence, then the shooting ivas in fact and laAV the act of the owner and not of the Company, while if the evidence showed that the authority to decide when the torpedo should be exploded was with the Company, and not with the owner, then the responsibility for consequences would be upon the Company, and it would be the party who was “shooting the well.” The expression “if the Company used nitro-glycerine in shooting the well” was the equivalent of saying that “if the Company shot the well with nitro-glycerine.” This was given on the hypothesis, fully stated in preceding parts of the charge, that if it should be found that, as between Grant and the Company, the latter had the authority to determine the time the Avell should be shot, then the Company was to be considered as having shot the well, and, when so considered was not an assumption on the part of the court, either that the Company controlled the time of exploding the torpedo, or that it actually exploded the torpedo. So, too, the court had, in other parts of the charge, given full instructions respecting the duty of seeing that the fires were out, and it was not necessary to repeat such instructions in these propositions, and it cannot reasonably be said that there was an assumption that such duty devolved on the Company in this request. A charge to a jury is to be taken as a whole, and if, considering the whole charge, the law of the case appears to have been correctly given to the jury, and in a way that will rea *618 sonably enable them to understand the rules of law .which they are to apply to the evidence before them, the charge will not be held erroneous simply because every condition to a recovery or a defense, is not embraced in each paragraph, where the paragraph excepted to is not in itself calculated to mislead.
Respecting the charge as to independent contractor, it is enough to say that the Company cannot well complain of what was said on that subject. Whether or not the plaintiff below might have objected to that instruction we need not consider.
Nor does the third request assume that there was evidence from which the jury might find that’ the Company caused, the torpedo to be exploded in the sense of dropping the go-devil by the hand of the Company’s servant. It was conceded that the act was the act of Grant, the owner, but there still remained the question whether in doing that he was not in fact acting for the Company, and if he was, then the Company caused the same to be done, and there was evidence from which the jury might find the existence of that claim. In short, the record shows that evidence was adduced tending to establish each one of the conditions embraced within this proposition, and the jury was properly instructed as to the legal effect that would follow a finding on their part that the evidence established each hypothesis. Had the Company desired instructions in connection with this more definite in detail, or embracing converse propositions of law, it was its privilege to ask for them.
The court further said to the jury:
“If, under the facts as you find them, it was the joint duty of both the owner and shooter engaged in a joint enterprise imposed upon them by the contraet, neither can shift the responsibility exclusively to the other, but it belongs to both, and either of them would be guilty of negligence in not seeing that the fire was extinguished under the boiler, for it is conceded by both sides that the extinguishment of that fire is a *619 necessary preliminary precaution in the business, and would be just as much the Company’s duty to see that the fire was extinguished under the boiler when the go-devil was dropped, as it would be to see that it was extinguished when it became necessary to explode the well by a jack squib.”
It is insisted that the court should not have told the jury that the foregoing “is conceded by both sides,” and assumed that it would be the duty of the Company to see that the fire under the boiler is extinguished “when it becomes necessary to explode a well with a jack-squib,” because the matter as to jack-squib was only casually mentioned as something used in some supposed cases, but no necessity existed for it in this case, as the torpedo exploded when the ‘iron was dropped; nothing such as is assumed was conceded, nor was any evidence offered tending to establish such facts.
There was some reference in the testimony to the custom of putting in of jack-squibs, and the record fails to show that the fact stated by the court was not conceded. The court had just before instructed the jury that:
“If it was the exclusive duty of the defendant Company to explode the well by dropping the go-devil as well as by putting in squibs —• if that should become necessary, then likewise, there was an obligation on said Company to see that the fire in the boiler was extinguished, but, perhaps not his exclusive duty under any circumstances, for possibly the owner would have the duty imposed upon him by virtue of his ownership in any event.”
We are unable to see that this matter objected to was prejudicial. Even if not conceded, it was illustrative at most, and although not a very clear statement, cannot have worked prejudice.
The court also said to the jury:
“You may look to the existence of the custom and say whether or not under the circumstances a pru *620 dent shooter of oil wells using nitro-glycerine, should leave the extinguishment of the fire entirely to the owner in such an extraordinarily dangerous operation. If you find from the evidence that it was a negligent act to rely on such custom, the defendant Company would be liable in this case, just as the owner would be, because of any duty that rested upon him in respect of the extinguishment of the fire.”
There was evidence respecting the custom as to whether or not it was usual for the “shooter” to leave the extinguishment of fires to the owner, and it was the claim of the Company, alleged in the answer and sought to be sustained by proof, that the duty of looking to the extinguishment of fires was wholly on the owner. In the light of that claim we are unable to see that the instruction was improper.
A number of other exceptions are argued. It seems hardly worth while to take space to further discuss the record. Indeed, more space has already been taken than probably the importance of the questions justify. Suffice it to say that we have examined all exceptions and do not find prejudicial error as to any.
It is argued by the defendant in error that the Company is liable, under the evidence, wholly irrespective of the question of negligence, because it was keeping and handling a dangerous substance. We do not find it necessary to discuss the question and express no opinion upon it.
Finding no error in the record, the judgments below will be

Affirmed.